**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Prim Securities, Inc., et al.,** | ) | **CASE NO. 1:05 CV 783** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **William McCarthy,** | ) | **Order** |
| | ) | |
| **Defendant.** | ) | |

**INTRODUCTION**

This matter is before the Court upon Defendant William McCarthy's Motion for Sanctions against Prim's Counsel and Prim (Doc.77). Also pending is Defendant William McCarthy's Motion for Rule 11 Sanctions (Doc. 82). This action relates to McCarthy's past employment relationship with defendants. For the reasons that follow, the motions are DENIED.

**FACTS**

The facts relevant to this case were fully set forth in this Court's summary judgment opinion. Only those facts necessary for a resolution of the present motions are set forth herein.

1

Plaintiffs, Prim Securities, Inc. and Prim Advisors, Inc. (collectively, "Prim"), filed this lawsuit against defendant, William McCarthy. While employed at Prim, McCarthy used his personal contacts in order to develop business for Prim, an investment firm. McCarthy was not a registered securities representative.

Robert Bennett, a partner in Bennett Partnership (hereafter "Bennett") was one of McCarthy's contacts. McCarthy told Prim he wished to pursue Bennett as a client. Prim was skeptical of Bennett and believed him to be very litigious and unethical. During the summary judgment briefing Prim's president averred that he spoke with McCarthy regarding his concerns. According to Prim, McCarthy promised to take complete responsibility for The Bennett Partnership account if the account was opened at Prim. McCarthy denied that any such conversation took place.

Thereafter, Bennett decided to invest $300,000 with Prim. McCarthy sent a letter to Bennett proposing a number of investment options. In March of 2000, Bennett and McCarthy's supervisor signed a series of documents. One of the documents indicated that Bennett's money would be managed by a Navallier. The other two documents indicated that the money would be invested under the PACS Model 80, a more conservative investment strategy. Ultimately, the money was invested with Navallier and Bennett lost nearly half of the value of its initial investment. Bennett demanded a full refund of the investment, but Prim refused. Bennett brought an arbitration action against Prim and the arbitrator awarded Bennett $35,000. Prior to the arbitration, but after Prim's initial investment, McCarthy signed a Registered Representative Contract with Prim. The contract contains an indemnification clause pursuant to which McCarthy agreed to indemnify Prim for his errors or negligence. After the arbitration award,

2

Prim brought this action against McCarthy seeking indemnification for the award and all expenses associated therewith.

Defendant filed counterclaims and a series of motions seeking to terminate plaintiffs' claims in this matter. Ultimately, the Court granted summary judgment in favor of defendant on plaintiffs' complaint.[1]

Defendant now moves in two separate motions for sanctions against Prim and Prim's counsel. According to defendant, the complaint was frivolous and filed in bad faith. As a sanction, defendant seeks to recover attorneys' fees in excess of $125,000. Prim opposes the motions.

**ANALYSIS**

A. Rule 11

Rule 11(b) authorizes a court to impose an appropriate sanction upon attorneys, law firms or parties that present pleadings that are (1) interposed for an improper purpose, (2) not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, or (3) not supported by evidentiary facts. *See, e.g.*, *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1379 (6th Cir. 1987). A court should impose sanctions "where there has not been reasonable inquiry by counsel or a party as to the facts or the law." *Keaton v. Hubbard*, No. 94-5076, 1995 WL 253192, at *2 (6th Cir. April 27, 1995). However, "[t]he court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other

---

[1] The order also granted summary judgment in favor of defendant with respect to counterclaims one, two and five and in favor of plaintiffs on counterclaims three and four.

3

paper was submitted." *INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 401 (6th Cir. 1987) (quoting Advisory Committee Notes to 1983 amendment).

Defendant argues that he is entitled to sanctions under all three subsections of Rule 11. In analyzing the claims, defendant addresses subsection two first, followed by one and three. The Court will address factors two and three together, followed by subsection one.

### 1. Subsections two and three (claims not warranted in law or supported by facts)

Defendant argues that sanctions are warranted because plaintiff's claim for contractual indemnification is not warranted under existing law or a good faith argument for an extension of existing law. According to defendant, it is well settled that contractual indemnification clauses are prospective in nature and cannot be applied retroactively to cover "pre-existing operative facts." In addition, defendant argues that plaintiffs failed to introduce evidence indicating, among other things, that defendant was negligent. Plaintiffs claim that they presented sufficient facts and law to demonstrate that the action was not frivolous. According to plaintiffs, simply losing a summary judgment motion does not warrant the imposition of sanctions.

In support of its position, defendant relies on *White v. Clay*, 2001 WL 17937346 (6th Cir. 2001). In *White*, the plaintiff filed a RICO action against his ex-wife, her attorney and members of the attorney's staff. The court concluded that sanctions were warranted pursuant to Rule 11 because the complaint and amended complaint were frivolous.

The Court finds *White* easily distinguishable from the present case. As an initial matter, the filing of a RICO claim against an ex-spouse and her divorce attorney rings of frivolity. Moreover, the plaintiff had filed claims or complaints involving at least one of the defendants on seven other occasions, including lawsuits against various judges and county attorneys who were

4

involved in the divorce.[2] Plaintiff also sued his ex-wife and her employer, filed false criminal charges against his ex-wife and attempted to involve the FBI in one matter. All of these claims were dismissed and plaintiff did not dispute that the claims were all frivolous. Unlike *White*, the plaintiffs in this case have brought no other actions against the defendant.[3]

Upon review, the Court finds that defendant is not entitled to sanctions. In sum, plaintiffs presented evidence that defendant introduced Bennett to plaintiffs and indicated that he would take full responsibility for Bennett's actions. Thereafter, he sent a letter to Bennett discussing a number of different investment options. The month that Bennett invested its money, McCarthy signed a draft registered representative agreement. Ultimately, the contract that formed the basis of plaintiff's complaint was not signed until nine months later. It appears, however, that trades may still have been made on Bennett's account even *after* the contract was signed. Although ultimately the Court concluded that the indemnification provision did not require defendant to indemnify plaintiffs, the Court finds that plaintiff's claim was not so baseless in either law or fact as to warrant Rule 11 sanctions.[4]

---

[2] Although the filing of similar complaints is a factor specific to frivolous RICO claims, the Court finds that this factor also relates generally to the reasonableness of the plaintiffs' conduct and that of their attorney.

[3] Defendant notes that plaintiffs filed a lawsuit concerning the arbitration with Bennett, which was dismissed. That lawsuit, however, did not include McCarthy. Nor did the lawsuit filed against Bennett, which was settled, include McCarthy.

[4] Defendant offers a myriad of other reasons why plaintiffs' claims were not supported in law. For example, defendant argues that plaintiffs' own negligence precluded assertion of a claim for indemnification. Defendant also argues that plaintiffs could not establish that he was negligent or that the arbitrator concluded that plaintiffs were vicariously liable. The Court finds that none of

This Court's conclusion is supported by the fact that defendant spent over $125,000 in legal fees defending this action.  With the exception of moving to dismiss one of defendant's counterclaims, plaintiff filed no substantive motions in this case and took only one deposition.  Nonetheless, defendant obviously believed this lawsuit required a substantial amount of time, research and motion practice.  Defendant hired an expert witness to defend against plaintiff's claims.  Surely these types of actions would not be necessary to defeat a frivolous lawsuit.  The Court finds that defendant's own actions in defending against this lawsuit belie any argument that the complaint was frivolous.[5]

    2.  Subsection one (improper purpose)

Defendant also argue that plaintiffs filed this lawsuit for an improper purpose.  Defendant points out that plaintiffs brought separate lawsuits against Bennett and one of the arbitrators involved in the arbitration.  The suit against Bennett was settled and the lawsuit against the arbitrator was recently dismissed for lack of jurisdiction.  According to defendant, this demonstrates that plaintiffs filed this lawsuit for an improper purpose.  In addition, defendant

---

these alleged deficiencies warrant Rule 11 sanctions. Although the Court concluded that defendant's actions did not rise to the level of negligence, defendant was instrumental in attracting Bennett and was involved, albeit indirectly, in setting up the account.

[5] The Court is careful to note that significant attorneys' fees certainly does not negate a finding of frivolousness.  A plaintiff pursuing a frivolous claim may force a defendant to incur substantial legal fees.  In this case, however, the plaintiff did no such thing.  Throughout this litigation, defendant appealed to this Court that plaintiffs were forcing him to "spend, spend, spend" and that he was being "bludgeoned" with legal fees.  The Court finds, however, that any  "bludgeoning" occurred due to defendant's choice of counsel, not any action taken by plaintiffs.

points out that, at the time Bennett threatened arbitration,  plaintiffs told Bennett that they would be forced to pursue an action against defendant in the event he proceeded with the arbitration. According to defendant, this lawsuit is nothing more than plaintiffs' attempt to extract retribution from Bennett and defendant.

Upon review, the Court finds that defendant is not entitled to sanctions under subsection one.  As plaintiffs point out, the litigation involving Bennett and the arbitrator did not involve defendant.  While these actions may have involved events overlapping those at issue in this lawsuit, the Court cannot say to any degree of certainty that this action was filed for an improper purpose.  In addition, the fact that plaintiffs threatened to bring suit against defendant concerning the Bennett arbitration does not rise to the level of "improper purpose."  Sadly, threats of litigation are commonplace, especially in a commercial setting.  Defendant  cannot deny that he was involved (at least indirectly) in the events leading up to the arbitration.  Thus, it was not unreasonable for plaintiffs to have informed Bennett that defendant would be involved in some fashion in the resolution of the dispute.  Accordingly, the Court finds that sanctions are not warranted on this basis.

### 3. Bait and switch

Defendant argues that plaintiff engaged in "bait and switch" tactics.  According to defendant, plaintiffs' complaint indicates that their indemnification claim is grounded in contract.  Defendant argues that during the course of the litigation, plaintiffs argued that they were entitled to indemnification based on defendant's oral promise to "make good" any damages incurred due to Bennett. Defendant claims that plaintiffs and their counsel vacillated between these two theories and that these actions demonstrate a "cavalier" attitude toward the Court.

Plaintiffs respond that the amended complaint put defendant on notice of the general nature of the claim. According to plaintiffs, the claim was "fleshed out" during discovery.

Upon review, the Court finds that defendant's argument must be rejected. While defendant correctly notes that plaintiffs did not allege the existence of the oral promise, the Court cannot say that simply raising an alternative non-pled theory during discovery warrants the imposition of sanctions.

B.  28 U.S.C. § 1927

In addition to seeking Rule 11 sanctions, defendant filed a separate motion for sanctions pursuant to 28 U.S.C. § 1927. That statute provides,

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

On its face, this section applies only to attorneys. Defendant, however, also asks this Court to impose sanctions upon plaintiffs and their counsel pursuant to this Court's inherent authority. *See, e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). In support of this motion, defendant essentially rehashes the arguments presented in the motion seeking Rule 11 sanctions. Although the arguments appear in a slightly different format, the gist of defendant's claim is that plaintiffs and their counsel acted unreasonably and pursued frivolous litigation. These arguments have already been addressed by the Court in the context of Rule 11. Although the standard between Rule 11, 28 U.S.C. § 1927 and the Court's inherent power may differ slightly, in the context of this case, the analysis is equally applicable. Thus, for the same reasons set forth above, the Court concludes that defendant is not entitled to sanctions. In addition, the Court finds that plaintiffs did not act in bad faith in filing and pursuing this lawsuit. Accordingly,

sanctions are not warranted.

## **CONCLUSION**

For the foregoing reasons, defendant's motions for sanctions are DENIED.

IT IS SO ORDERED.


    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge


Dated: 10/30/06